the fourth district appellate court of the state of illinois has reconvened the honorable robert j stagman presiding thank you mr davis our next case this afternoon is um 424 1389 i should mention before we start that we're starting a little late but that's because we had a oral argument we just finished so i apologize to council for our late start but that's things sometimes work in this case um as i mentioned it's people the state of illinois versus gary irby the third 424 1389 i'll ask council for the problem please state your name sir james waller with state appellate defender's office thank you council for the appellee please state your name sir matthew goldman for the people of illinois thank you council uh mr waller on behalf of the defendant he would proceed with your argument thank you may it please the court and council my name is james waller it's my pleasure to represent gary irby before you here today we raised four issues on appeal but today i only intend to devote my time to issues one and two because they both reveal a single repeating flaw in the trial court's approach at each critical juncture the court skipped over every less restrictive alternative and went straight to the harshest sanction available i'm of course happy to answer any questions about issue three involving the misleading grand jury presentation or issue four involving gary's emerging adult proportionate penalties claim but the heart of this case and the reason a new trial is required is the trial court's consistent refusal to consider less restrictive measures before imposing more severe ones on the first issue the trial court stripped gary of counsel without seriously considering any less restrictive alternatives illinois law recognizes three paths by which a defendant may lose counsel right there's express which requires full 401a admonitions and the waiver on the record everybody agrees that's not what we're dealing with here there's also a waiver by conduct which requires warnings about the consequences of specific behavior and that continuing that behavior will cost you your right to counsel then when you continue in that you've deemed to have waived your right to counsel that's also not what we're dealing with here because here the court found forfeiture by severe misconduct which is the rarest category reserved for extreme unmanageable threats that's what the court implemented and the central constitutional failure here was twofold really that the court failed to consider reason to reasonably consider less restrictive alternatives as to the denial of counsel and that the behavior in question did not rise to the level of severe misconduct such that no warnings were necessary council i have several questions on this point i want to proceed with uh first uh it appears from the record that the court on hearing about the alleged threats spoke to counsel and also spoke to the defendant about him and ultimately concluded that the threats occur would you agree yes that's correct okay uh and what the court said about this is that um mr mackle downy sincerely in court indicated that his wariness in fear of attack from the defender is basically too much for him to overcome and he could not continue as defendant's counsel in a position to overcome or you cannot continue to counsel and the court concluded was not in a position to overcome that judgment by counsel should it have not accepted those representations well counsel's subjective concern which may absolutely be valid i don't claim that he was being dishonest or anything um his subjective concerns are not the controlling test for constitutional deprivation the court should have either the court should have either uh first of all the court is required to maybe test those restricted alternatives um shackling him uh removing him moving him away now counsel said that he didn't think he'd be able to hide his distrust of his client even if the client were in a holding cell communicating only through bailiffs um and physically situated from counsel said he couldn't hide his distrust okay then then we need to appoint new counsel unfortunately um your honor justice steigman you even mentioned in aims and people be aims that sometimes we just need to appoint a new attorney and charge the defendant five thousand dollars for it you know we have in a moment but let me have some other questions uh trial court in its uh findings said a forfeiture of defendant's right to counsel results from a defendant's severe misconduct and requires no prior warnings or admonition is that correct is is it correct that the court said that yes i believe so yeah that sounds right correct statement of the law that uh that extreme misconduct requires no prior warnings that's correct that's my understanding okay the court also said forfeiture of counsels reserved for the most severe cases causes and cases of misconduct and should result only when less restrictive measures are inappropriate you've indicated disagreement with that uh so some other questions at this point but first what less restrictive measures on this record could the trial court have imposed a booze hearing you know we we shackled the hearing uh same thing we'd have in a booze hearing your honor we shackle the defendant we said the the count the court actually gave i don't want to say lip service the court mentioned several alternatives that it could that it could investigate separating them uh shackling the defendant having him even appear remote or through a holding cell door uh those are all when you meet by separating them you mean defense counsel would not have been at the same table yes that's those are some of the alternatives that the court precedent for that are you aware of any case in which that has ever occurred well certainly there are numerous cases where the defendant has been shackled as far as can i name any case where somebody's been seated separately problem with seating defense counsel separate from his client in a courtroom at trial it's certainly less restrictive than taking away counsel altogether and i've certainly seen to answer your question your honor absolutely have i seen cases where we've sat the defendant back in a holding cell and he has to communicate loudly through or through written notes to the bailiff i've absolutely seen that with my own two eyes your honor yes but how about in the courtroom itself i'm i'm that's what i'm as far as i'm saying i'm sitting where a defendant is at one table in a courtroom and he spends 30s in another no but that seems less restrictive than putting him in a holding cell and having him communicate through writing which we've seen so also your position seems to be that there has to be a warning before the court can find forfeiture by severe misconduct is that correct nope that's not my position uh there needs to be a warning if it's by less severe if it's if it's a waiver by conduct there has to be a warning if it is extreme misconduct there does not need to be a warning but the court still needs to investigate less restrictive measures before denying the right to counsel that's what a constitutional right really is um it's the last resort before we violate something like that so um there does not need to be a warning now the court tried to say that there had been warnings but then said that it found that that doesn't even apply because it was finding extreme misconduct my position is the court did not investigate less restrictive uh measures and also that this really doesn't quite rise to the level of extreme misconduct you asked a moment ago your honor if that's a correct statement of the law that extreme misconduct doesn't require warnings it is to the extent that there's really any developed law in illinois on this point i really think aims your honor's own opinion kind of laid this out i won't say quite as a case of first impression but there was because there has not been a case in illinois or anywhere in the seventh circuit where anybody has ever found forfeiture by severe misconduct and i've personally seen conduct much more severe than this but nobody's ever found a forfeiture by severe misconduct in illinois or or the midwest maybe um this is in front of me i want to run a quotes by you and get your thoughts on it okay another method of relinquishing the right to counsel's forfeiture which occurs only after severe misconduct an example such misconduct occurred in the united states as mccloyd 11th circuit case right in mccloy the trial court conducted a hearing defense attorneys motion to withdraw at which the attorney testified that the defendant was verbally abusive threatened to harm him repeatedly threatened to sue him and so forth the court concluded defendant by virtue of his pervasive misconduct had forfeited his right to counsel and aims also cited a pennsylvania superior court case where the court concluded defendant forging the right to counsel through his pattern of serious misconduct abuse and threats so why isn't that a recognition of threats and one other thing by the way quote from aims uh one of the differences between waiver of counsel and conduct waiver of counsel by conduct and forfeiture of conduct is the latter may occur because the defendant's severe misconduct without the defendant's first having been warned of the consequences of his engaging in that severe misconduct this is still quoting from aims trial court has the discretion to determine whether was so severe such as physically attacking defense counsel but no warning was necessary so are you arguing that because this court in aims used as an example of the defendant's severe misconduct is physically attacking his counsel that we are holding that a credible threat by defendant physically harm his counsel would not constitute severe misconduct your honor the key to the answer is that what the language you actually quoted there from aims which was pervasive the court it was because of pervasive misconduct repeated threats to counsel repeated threats to sue him repeated coercion to get him to behave unethically and to file unethical things all side for the moment they're key to your answer your honor they are talking about threats of physical harm that's where i want to focus and that's where i want you to focus your attention threats of physical harm you're maintaining that somehow aims didn't include threats of physical harm as being pervasive misconduct aims does not stand for the idea that a single threat of physical harm rises to the level of severe misconduct we could make that finding but this would be the first case to do so why shouldn't we because because well for a couple of reasons your honor first of all the sixth amendment it's important right um it should removing counsel should be the last straw when there are when there are more when there are plenty there are a plethora of other solutions that the court can implement before violating a fundamental constitutional right we can shackle them we can separate them we can appoint him a new attorney well well how would appointing a new attorney make any difference well if if well the court relied on several reasons here to find extreme misconduct right the court found the threat the court found that uh that because the defendant had had made pro se filings and request made a number of requested continuances all of this fell under extreme misconduct so i want to focus on threats he threatened the defendant threatened physically two different attorneys and again why is my point of honor is in aims in aims you said you cited other cases that that relied on more than just a physical threat um and in and and for the things that aren't physical threat we can give them a new attorney right on the things that we're currently supposed to do he's supposed to wait until he gets threatened again so if we're talking about just a physical threat then then replacing the attorney may not be the best solution but we have the others you know i've been in court when when attorneys physically when are physically attacked by the by their client it's it's unfortunate and we don't like that we have measures to prevent that from happening we have we shackle them we separate them you communicate only through written notes you communicate through the bailiff those are things we can do that are uh and and if if the problem is counsel's the problem here was that counsel said he couldn't hide his fear and distrust if that's the problem then we give him a new attorney and maybe we make him pay for it but we we don't strip the the the constitutional right to attorney based on one threat that is uncoated at that point and frankly what that has at this point um and frankly why shouldn't we adopt the language of the main supreme court cited by mr goldman in nesbitt here's the quote no attorney particularly including appointed counsel whose willingness to accept appointments in criminal cases is critical to the vitality of the right to counsel and his work contains a strong element of public service no attorney should be expected to tolerate threatening conduct from a client and in nesbitt supreme court of maine said this is forfeiture by severe misconduct and took away the right why shouldn't that be the rule in the state then to the extent that what i wrote names wasn't clear enough how about let's make it more clear now your honor frankly i believe the sixth amendment is made of sterner stuff sterner stuff and you're right as a defense attorney should we should we want them to put up with the occasional threats no but but but frankly it's it's it's almost commonplace if this court was aware like it happens so often that we're going to end up with we're going to end up with a whole slew of pro se defendants because because these types of threats are made they they they just are it's sub rosa counsel if if it happens that often and and we accept what you're really advocating is sort of a one bite rule that uh until there's actually an attack there there's no remedy uh you're worried about the future i'm worried about having enough defendants represented by counsel in any case because who wants to do this work if i do somebody when somebody threatens to physically harm you or your children that we won't protect them by saying you don't have to do this and just putting somebody else in the same position seems like a really poor answer i think your honors here's the here's the here's a direct answer for you if i haven't been direct enough if this court says that a a single verbal threat um of harm to the attorney to the attorneys children if if that is sufficient to restrict the right to counsel without warning this will be the first state to do so and it will be the such a low bar i think it will have catastrophic effects about the you know you keep saying that there was never a warning and on page 1745 of the record it says as he's appointing the attorney in question he says in the event this doesn't go well in other words the defendant doesn't like what's happening or gets dissatisfied and wants to take another route he'll be expected to proceed pro se now i would that's not the constitution your honor i i would say it's a warning but it's not the constitution he can say whatever he wants but that doesn't make it the i'm sorry no no no sure you have said the judge falsely said he warned him previously and i'm just pointing out that you're wrong about that he did warn him that if this doesn't go if you become dissatisfied now he way overshot dissatisfaction when he threatened physically his lawyer but the point is when you say there was not a warning i see you better watch yourself with this lawyer or else you may have to go uh pro se you're wrong about that the record contradicts your honor let me make a clarification on my position then because that that is about that's a great point there was no warning tied to the specific behavior that led to the removal of of counsel with the the behavior that that i believe at that time um uh i don't remember which judge was sitting at that time but uh the the behavior he was complaining of at that time had nothing to do with what later ended up costing counsel and he was don't you think that if you can't do that it's pretty clear you shouldn't physically threaten your lawyer don't you think that that's that meant manifestation of dissatisfaction a threat to somebody's safety is clearly well above that level of conduct your honor that warning is the same as saying if if you speak loudly in court i'm going to take away your attorney like it's not it's not a constitutionally valid warning because not getting along with your attorney doesn't mean you don't get an attorney it just doesn't under the sixth amendment under any case you keep equating that counsel not getting along or being disrupted with making physical threats to i'm not your honor i'm talking i'm answering justice doherty's question about the warning and answering he was not warning it and how about if we firmly non-equivocally reject that equivalence to say no physically harming doesn't work ever you can reject it your honor because i'm not making that equivalence yeah i'm happy to move hasn't every parent heard this kind of argument right well you told me i had to get along with my brother all i did was threaten to kill him right but that seems to be within the scope of the warning possibly and in which case i'm happy to say i misspoke by saying there had never been any warning there was no constitutionally valid warning because that threat is not constitutionally valid you can't threaten to take away somebody's lawyer because they're not getting along with their lawyer or because they requested continuance if i may other than an act of physical violence what conduct would be severe enough in your opinion to justify to justify a finding of severe that the defendant forfeited their right by severe misconduct then other than an act of physical violence and i think that goes right to it your honor what we what we shouldn't have is a bright line rule in in the prior cases in the other extrajudicial cases that have found this it has been a repeated pattern of pervasive conduct that i don't believe has happened here um well i guess my question is if we put it together that the first attorney he threatened that attorney threatened the attorney's children he then continued to threaten the attorney after that attorney was no longer his lawyer when he saw him in parts of the courthouse and and it appears to me the judge found this to be credible if you will he then got a new went per se then got a new attorney and then proceeded to threaten him and report him to ardc how is that not a pervasive course of conduct well first of all the your point about the the multiple the threats to the multiple attorneys the first attorney didn't find the threat to be such that it required being reported to the court or even that he sought to withdraw as counsel based so i don't think the court at this hearing sure the court at this hearing took the objective approach and heard all that evidence and made that determination and said i find this a severe misconduct now second tier i'm going to ask as as alternatives and if there are ways of salvaging this then he makes the inquiry to the court to the attorney to say is there anything we can do because he's already found the conduct was severe enough to warrant forfeiting his right to counsel i guess so i don't find fault with the court asking and i don't know if there's any way to salvage that so i guess i appreciate that the first attorney did not withdraw but that's his subjective belief perhaps that that was not warranted or or perhaps he felt so concerned he couldn't but i'll leave that for another day but this information now becomes before the court in one hearing it was very clear this was going to be addressed and i think the court when it started to make inquiry of counsel at that time as to whether there was anything that could salvage this relationship the trial judge had already determined that severe misconduct had occurred and so that was the objective approach before we ever get into the subjective feelings of of counsel if in this case counsel said yes i think i could do this for whatever reason with whatever accommodation then i think the question as well is that still in which case correct of course your honor and which again i think reasonable people who just can disagree as to where that line is and i think that we should not have a bright line rule but the more important problem with this case is that the court did not implement a less restrictive measure than a constitutional denial of the right to counsel and that that's where the court made the mistake the court made the same mistake with not granting the continuance and therefore denying outright the alibi defense it did not take the less restrictive approach um i'll ask to speak to this a bit on rebuttal i do want to give counsel a an opportunity to respond to what i would have to say about the second issue briefly though um which is again that the court uh the court had an opportunity to uh take less restrictive approaches there by uh granting the state's request for a continuance after the possibly late disclosed alibi defense client objected to a continuance correct the court that he did object to continuance but he did so before knowing that that was tied to his request for the alibi he he says well i don't want to continue this and then the court says well then you can't have the alibi defense this was a direct this was a direct result of him not having his attorney um if he and if he had had an attorney the court would have said counsel you can't you can't you can't turn over a late alibi defense and then object to the continuance i'm going to grant the continuance that's what the court should have did it can't be treated as a waiver or forfeiture because again he didn't know what if you read the record that that objection that major objection is given before he understands that that that decision is tied to whether or not he can pursue his alibi defense he should have been given the opportunity to either withdraw his objection or the court should have just overridden it and and granted the continuance but it's not an informed waiver because he doesn't understand the consequences of objecting to the continuance because i've asked you a lot of questions and my colleagues have as well your time is up and i want to give you some additional time because this is an important subject and i want to make sure we all have an opportunity to ask you questions and they may have some as well but i have an additional question i want to ask you about all this assuming a trial court conducts a hearing of whatever sort and determines after talking to a defendant and his lawyer that a credible threat to inflict physical harm was made upon the lawyer why shouldn't it be the rule that that's enough in and of itself to find forfeiture by wrongdoing of the right to counsel and strip the defendant of his right to counsel at that point right then it shouldn't be your honor because it weakens the sixth amendment too much um that's my second question by the way what in the sixth amendment would prohibit such a rule from existing well the fact first of all the fact that there are less restrictive measures the whole point of a constitutional right is that you take it away as a last measure the existence of less of less extreme responses to that where we can we can provide for the defense counsel safety um and and and frankly defense counsel being unwilling to represent somebody after a threat is is such an outlier that we could take some steps to to take care of that if we can take the steps to take care of that before you mentioned a couple times you mentioned shackling but i've never seen a situation maybe there are some where a shackled defendant had his hands shackled in front of the jury i've seen situations where he's duct taped in front of the jury and and i've absolutely seen shackled in front of the jury i couldn't tell you firsthand if i've seen that i've certainly seen situations where he has to communicate remotely um or through a cell if a defendant is sitting next to a lawyer and he wants to take notes or his lawyer is taking notes they can grab a pen or pencil the defendant could if he were intent on inflicting harm and by the way of course talking about a guy who's charged with cold-blooded first-degree murder uh his attorney might be a little concerned this isn't a dui case about grabbing a pen or pencil and trying to stab his lawyer sitting next to him before court security people could intervene why wouldn't that be a legitimate concern it should be a legitimate concern but then we see them separately there are less restrictive options there are things especially i'm talking to you on zoom your honor we can certainly we can have remote court um my client i'm not in threat from my client in any state way shape or form right now so they're asking some additional questions i want to give my colleagues a chance as well to ask or if you wanted to uh finish up the point you wanted to make otherwise thank you yes i'll just jump right back in in cases unless there's any other questions i just want to point out that on the second issue under rule 415 g a continuance is the first least restrictive remedy um the the court didn't um the court has reversed when the same thing has happened in hauser this court reversed in hauser this court reversed in foster and other courts rules similarly in gracie brooks and levin if you deny somebody their entire defense it's tantamount to not even really having a trial um and and if there are if there are less restrictive uh measures the court needs to have taken them you know if all you have is a hammer the whole world looks like a nail and it seems as though this court took the every problem that was presented by implementing the most severe consequence to everything that happened before it so uh it's important i think this was a murder prosecution your honor of against somebody who was 21 years old educated in juvenile prison and in a case like that taking away counsel should be the last thing we do we should exhaust every other possible resource before taking away such a fundamental right and before taking away their defense which is basically just as damaging as taking away their uh counsel especially when that defense was dictated by the counsel that you took away from them not you obviously when the court took away from them so anyway uh i i don't want to continue to beat that horse but um counsel if i may just following up on that just for one moment the defendant there was a time period after he had counsel where he was pro se as well much earlier on in the proceeding so he could have raised the alibi defense at that time couldn't he well your honor we we know that he didn't get all of his discovery until like a week after he lost his second attorney but it's his own alibi right and he has no say he absolutely wouldn't he have known wouldn't that be within his errant control of knowledge it was sure and and what we have is evidence on the record that when that was his intent and when he brought his counsel on counsel says he disclosed an alibi defense to me i chose not to pursue it i can and the court held him to that so it was it's clearly it was his intent to and he brought on his attorney before his alibi uh obligation to turn over was complete because the state still hadn't been given him all of their discovery so he could have turned it over he was not required to yet when he brought counsel on he tried to get counsel to turn over an alibi defense counsel said he wasn't going to and then the court took away counsel so the court denied him the expertise on how to defend the case without an alibi defense and then didn't let him present the alibi defense so that's that's a that's a massive witnesses to testify though correct he just didn't allow them to establish the alibi right right he denied the defense that's right which which which again in a case like this where we're talking about uh we're talking about the gps we're talking about the location which is the whole defense um that's that's the entire trial so uh you can't do both you can't take away his counsel and hold him to counsels without without impugning the problems under freddo where he gets to control his own defense um if the problem is waiver or invited error the problem is that the the issues were never tied together he was never explained that the that the objection would cost him his alibi defense so there was no informed consent there was no waiver by counsel or anybody else so i'll leave it at that thank you for the extra time we asked for a new trial based on those two issues i'm also happy to talk about issues three or four if you want and i'll see you again in rebuttal okay thank you counsel mr goldman and we make your argument at this time thank you your honor um so turning first to uh counsel's first argument regarding the discharge of counsel um i think your honors uh hit the nail on the head uh that this was a situation with pervasive misconduct uh this was not a one-time uh instance with a single attorney if a threat perhaps occurred to just one attorney uh maybe that attorney could fairly think uh maybe this is a personal issue somebody else might be able to get along better with this defendant and uh simply move on appears that's what happened with hugh toner except it then happened again as soon as the defendant got his new attorney so this isn't something that was specific to one attorney and some kind of breakdown in communication this is something that this defendant was doing over and over and over again uh i i think particularly chilling is when you look at the record and the defense attorney is recounting what happened during his interactions with the defendant uh he explains that uh after the defendant made his threat the attorney inquired is this just you being a little upset or having hard feelings and the defendant apparently calmly explained over the course of approximately 10 minutes how serious he was about this threat when he showed up in court he claimed that he never made this kind of threat but then they they found a recorded phone call in which the defendant explicitly states that he threatened his attorney uh just moments before the phone call and so this is a situation in which uh this uh this defendant uh was not only making these threats but being very uh essentially lying about having made those threats because he knew uh how serious the situation was he knew that these threats were unacceptable uh because there of that recording we know that counsel's concerns were not merely subjective he described uh the threats that he made to the defendant using multiple x excuse me to defense counsel uh using expletives talking about how he said that he was going to essentially beat up his attorney and his attorney said that have to withdraw uh on that phone call and that corroborates the defense attorney's uh description of what happened during that threat um the fact that this happened to two attorneys shows that's pervasive but also uh the fact that the defendant threatened the children of the first attorney shows that this is not a threat that was limited to a personal attack uh the defendant was in in jail ostensibly the only way that the children would be at risk is if somebody else were to go after the children so the the fact that he's implicating other people who are outside of the court system uh shows that this was a particularly dangerous kind of threat uh the the when the court uh excuse me one of the solutions that defense counsel uh on appeal is suggesting that they could be separated uh you know is something that perhaps could be done in discretion but i would argue that if they were separated uh we would be up here on appeal talking about how the fact they were separated indicated that this defendant was so dangerous that he had to be treated like Hannibal Lecter and separated from everybody else uh and and that would also implicate other rights of the defendant uh and so there's not a perfect solution here i think that this court uh was correct in aims when it when it said that this is a matter that is left up to the trial court's discretion uh the court identified several factors uh in that decision and in uh later decisions that the court can consider when determining whether or not uh superior misconduct occurred the court described verbal abuse threats of harm threats to sue attempts to get the attorney to do something unethical and yelling combined with refusal to cooperate um verbal abuse certainly took place in this case threats of harm certainly took place in this case although a threat to sue specifically did not occur uh the court seemed to take the ardc complaints as something of a similar nature obviously it's a different kind of uh of threat um but taking away somebody's law license or threatening to do so uh seems to be of at least a similar nature as threatening to sue them for money um the attempts to get the attorney to do something unethical uh the trial court uh referred to the pro se filings to the attempts to get the attorney to file what the court considered to be frivolous claims uh and so and then additionally although that uh it's unclear whether or not there was any yelling uh there certainly was a refusal to cooperate uh and so with all of these factors that this court has identified uh previously applying uh some of them perfectly some of them somewhat imperfectly uh this court should that the court was well within its discretion to determine that this was severe misconduct it was pervasive misconduct and for that reason uh the trial court was within its discretion to discharge counsel and uh find that the defendant had waived uh his right to counsel under these circumstances now i i share uh defense counsel's concerns about the sixth amendment here um uh and i can't remember which justice said this but uh i think the the other thing to balance against that is the concern that there may not be enough defense attorneys willing to represent clients if those defense attorneys are constantly being threatened uh and i understand mr waller's comments about how this is something that defense attorneys uh have to deal with from time to time uh in a prior life i was a defense attorney as well uh this is not something that's completely foreign to me um but it isn't something that should be tolerated in circumstances in which the defense attorney does think that the threats are serious and real uh defense attorneys do have to make decisions about whether or not to report uh these things whether or not the threats are serious whether the defendant is so dangerous that they should be taken seriously uh apparently in this case hugh toner was threatened his children were threatened and maybe he is simply made of steel and decided that uh this is not something worth reporting this is not something that i'm overly concerned about and brushed it off he used his discretion as a professional to decide that this wasn't the time to do so when the next attorney came along and got threatened uh in in a different way uh that attorney used his own discretion to determine the threats were real these were significant that he could not represent this defendant any longer these are all situations in which different defense attorneys are going to have different opinions but the fact remains that when it is brought to the court's attention and is addressed and it's proven that this is uh something that is serious pervasive uh and credible uh the trial court should be allowed to use its discretion the trial court should be empowered to use its to uh act in the way that the court did in this case um your honors just to us and to trial judges on dealing with these kinds of circumstances i'm sorry what bright line rule for a court of uh binding precedent trial courts will be looking uh we have lots of cases dealing with something dependent or another so what's the rule that uh you would suggest we provide for trial courts and counsel here uh well your honor i don't think that this is a situation in which a bright line rule makes a whole lot of sense because each of these circumstances is going to depend upon a wide variety of factors uh whether there's verbal abuse whether there's stress of harm whether this happened on one occasion or multiple occasions whether this has happened to one attorney or multiple attorneys uh these are all things that the trial court should consider uh in utilizing its discretion uh now whether or not a single threat would justify it i think that that's something that depending upon the the circumstances evaluated by the trial court uh it could justify it or it could not the trial court it could after evaluating all of the uh information before it determined that that threat was made uh in the moment or perhaps as a joke uh or it was made uh fleetingly or is made to one particular uh defense attorney and the court has reason to believe it wouldn't be made to another and so creating a bright line rule in which you say one threat automatically means that the sixth amendment can be taken away uh right to counsel can be taken away i don't think it's necessary uh however i i would say that this court should uh reiterate the factors that it's reiterated in aims and elsewhere uh and say that the court should be allowed to consider these factors in order to in its discretion determine uh that uh stripping the right to counsel uh is the appropriate outcome um i i would argue that uh this court does not need to go so far as saying that one particular thing uh is you know means that it the right must automatically be stripped or it means that it's automatically justified um just because of the complex nature of these situations go ahead uh thank you your honor um your honors i would i would just uh again emphasize that you know i public defenders have to tolerate a lot uh in their jobs uh i know your judge steigman has uh stated in the uh in prior decisions about how uh they have to deal with difficult cases difficult clients uh oftentimes brutal workloads uh but they should not have to endure the circumstances found in this case uh this case uh whatever uh bright line rule your honors might have in mind this case surely goes beyond it this was a situation with pervasive serious threats by a defendant who was accused and later convicted of first degree cold-blooded murder uh under these circumstances this court should conclude that the trial court did not abuse its discretion uh and because no clear obvious error occurred in this case uh no plain error could have occurred uh unless there are any further questions on that first point i'll turn to the second point raised by counsel the argument that uh barring the alibi defense uh uh was an error um again no clear obvious error occurred regarding this issue uh this was an alibi defense that was disclosed the day of trial um and i believe it was justice leonard who pointed out that this was not the first time that this defendant had been pro se uh this defendant had been pro se for months in 2023 and during that time could have uh disclosed at any time this defense that he wanted to raise he did not do so now defense counsels brought up the fact that uh all of the discovery had not yet been produced uh that is true however this is an alibi defense this is a situation in which it should not depend upon other things that could come out of discovery uh where the defendant was on that night he knew where he was uh if it depended upon what other evidence showed whether or not he was going to say he was in this location or another location uh that certainly does not speak well to the validity of this alibi defense this defendant knew where he was on the night in question if he if he thought that he was at his during the time that the murder took place uh he would have known that from day one and he would have been able to disclose that uh during the initial pro se period uh additionally when oh excuse me if you will address also um appellate counsel's reference uh with regards to the the continuance if you will where um the defendant indicated that he wanted to proceed with trial but that the assertion that at that point it had not yet been explained to him that he by doing so uh he would be foregoing any opportunity um to present that alibi defense and so that that was premature if you will at the point that he indicated he wanted to proceed with the trial and that the court should have made further inquiry after if you will providing him that warning how do you respond to that yes your honor so under those circumstances uh the defendant uh as you noted explicitly rejected a continuance uh everybody in the courtroom was asking for a continuance essentially except for him uh the although he might not have known uh everything that could have resulted from his choice to deny that continuance uh under these circumstances this is one of the difficulties of going pro se uh and i certainly understand defense counsel's concern that this is a situation in which he uh had that right strip from him due to severe misconduct rather than choosing to go pro se um but the fact that he was pro se i i think when we look at this through the lens of other circumstances in which people are pro se they're generally held to a similar standard they're not given a whole lot of extra leeway uh due to the fact that they are uh pro se obviously this is one of the dangers of being pro se this is one of the reasons why uh perhaps he should not have threatened to physically harm his attorneys uh and have his attorneys then be discharged uh i i certainly agree with counsel that things might have gone differently um had he had uh an attorney now that attorney probably would have said due to the fact that the gps data puts you at the scene of the crime we're not going to do an alibi defense because that flies in the face of all of the evidence that we have uh but the the method in which uh they they proceeded with this uh this continuance might have gone differently if he had counsel it's a tough situation uh to be pro se uh but when when a person is pro se uh they have to unfortunately uh live with their decisions and by rejecting a continuance uh without you know having uh looked at all the case law having looked at how courts tend to handle these things uh uh without having looked into uh the supreme court rules as to what are the proper remedies um for a late disclosure of a defense such as this one uh and knowing how courts may treat this that's something that unfortunately the defendant has to live with as as a pro se litigant does that answer your question your honor thank you um your honors i would argue that uh due to the fact that he uh did reject the continuance he was offered uh the kind of relief that uh he now essentially seeks on appeal and he rejected it this court should conclude that the defendant invited the error uh that he is now complaining of uh and because it was an invited error this court should conclude that he cannot seek relief under the plain error doctrine um and that uh therefore this claim should be rejected unless there are any further questions uh for the rest i'd simply stand on the strength of my brief is written and thank you your honors for your time thank you mr goldman mr waller you may make a rebuttal argument this time but coming is no surprise to you i'm sure i have two questions i want to ask you first and if necessary i'll give you additional time because this is a point where an argument i want to make sure everyone's had a chance to speak first question i want to ask you is actually two parts you mentioned you do not seem to be arguing that a serious misconduct occurred in this case but your primary argument seems to me to be that uh the remedy used by the court was excessive namely to deprive the defendant of his counsel is that correct i mean that's certainly my fallback position your honor i will say and just just to be just a real quick clarification there is there has been as you know no firm case law in illinois on what makes severe misconduct so in the absence of that i say this doesn't reach it if if this court finds that it does that absolutely it should have exhausted less restrictive measures okay you you mentioned one of the remedies i think a few times would be to have the defendant at a different table in the courtroom or to have the defendant maybe in some separate room while the defense attorney was in the courtroom is that correct yes okay now it seems to me that both of those circumstances mr goldman argued would be severe uh impediments to sixth amendment right to counsel's where you understand it and not only would that be a problem but uh how would judge waller explain to the jury in your courtroom why uh that is now occurring what what explanation would you give well your honor it would it would it be an impediment to the sixth amendment yes would it be as strong an impediment as taking away your right to attorney completely no and that's what we're saying we need to have the least it's not just lesser the least restrictive measures is what we need to investigate here and what's your instructions to the jury well i would try you know if i could first of all i would just try shackling him um and if if i had to um if i could avoid bringing it up i would if if if after i exercise my discretion said he has to be separated um i would frankly not i would not draw attention to it i would ask i would ask both councils i would explain this is being done in order to protect his right to counsel i'll ask counsel's suggestions for how we want to address it with the jury if at all and i would and i would i would that under consideration my first instinct would be not to draw anybody's attention to it to treat this as standard operating procedure and but i would see how the councils in that particular situation based on the circumstances of that case how they would suggest that we should we should move forward because it is it should be sensitive sorry second question is let's assume um that no threats have been made in this case but they had been an unhappy defendant as many are and he's sitting at council table and while sitting there he leans back and smashes one of his attorneys his then current defense attorney in the face and knocks him down and uh uh causes an injury which i've seen okay would that be a basis to find that he is now forfeited by misconduct his right to counsel i would try to do everything i could to avoid making that finding because i think that the right to counsel is sacrosanct but um that i think should be the my position that should be that's a situation where a reasonable person could find the line absolutely but there's no warning he hasn't been warned don't hit your counsel in the face and knock him out yeah they uh i think that a warning should be appropriate um you mean if possible routinely so at what point do you make this warning well i'm saying um ideally uh i mean i would i would i would talk to counsel too again everything should be fact specific in that but in that case i i think it would be not necessarily unreasonable to find that severe misconduct had occurred if an actual demonstrable attack had occurred at open court i i'm not i'm not arguing that point with you um i think reasonable people could find that again this would be the first case to do so and even though no warning had occurred is that correct if uh if we had to again i i would prefer a system in which you see i would to take justice stories you know uh i don't know that a one bite rule should be absolutely off the table but but fine i'm not going to be unreasonable and say no way everybody should get to do whatever they want i understand okay counsel i asked you some questions i want to give an opportunity for your rebuttal argument and also for my colleagues as appreciate it um you know counsel talked counsel talked about and and your honor asked about a little bit too about how maybe other rights of the defendant are implicated by these less restrictive measures um but we have we have booze hearings we have circumstances where we've had to duct tape defendants we always treat the denial of counsel like all of these things do impact the rights but the right to counsel um is one of the most you know it's it's it's an enumerated right uh it's it's foundational it's backed up by a lot of case law and we we do we impair that right when we have to um but in illinois we just almost never take it away um and i and i and i think that that should continue to be our practice so uh yes you know you lose some things when you get duct taped when you have a booze hearing and you're shackled sometimes you know sometimes courts even have to make a finding that he has to be shackled here and i'm gonna have to explain it to the jury that's still better than denying you the right to counsel than just completely taking away your right a constitutional right like that um again i think that ardc complaints for defense attorneys are i don't want to say commonplace but they're certainly not a rarity you get a letter to the ardc you write back what happened that's the end of it it happens maybe annually for a lot of uh volume practitioners um that's not the same as numerous lawsuits to the attorney and so it it's not quite the same as equating it to the misbehavior we saw in the cloud but with all that in mind the fact that we have the risk of being attacked the fact that we know we're going to face ardc complaints i don't think that that is impaired the availability of defense attorneys in the in the state i i think that salary might but i don't think that i don't think that those have caused a paucity or a dearth of defense attorneys we know those going in we do it because it's a calling um so i i don't think that uh the law staying as it is right now would would cause there to be any uh any future lack of defense counsel um counsel also counsel don't you agree though that it's different to say we do this knowing there's a risk versus saying the judge will make you stay on the job after there's been multiple threats sure those really they're they're not equivalent but i don't believe that i don't believe that we're going to lose all of our defense attorneys just because that happens same way we didn't lose all cops when we came up with the exclusionary rule or 1983 litigation you know it's a give and take but um it is different i'm not going to pretend that it's not absolutely um counsel kept talking about how the court exercises discretion i want to be make sure we're clear this is a de novo review uh the whether or not counsel was improperly denied under the sixth amendment is a de novo review we certainly want to defer to their factory who said that what on what basis is this de novo why isn't this a matter of the trial court's discretion based upon the circumstances with which the court has confronted the misconduct of the defendant to decide whether or not this requires um the uh forfeiture by uh wrongdoing sure i mean i've got the standard of review in my brief but whether or not the defendant was deprived of the right to counsel is reviewed de novo that's people be leslie leslie 2018 illinois spring court case um standard of review of adequacy council is also reviewed de novo um that's people be leaper um and and again your honor said in aims if a court of review if a court of review determines the trial court improperly forced the defendant to represent himself at trial there's no such thing so again the courts of review on de novo review make that determination now the court's review why isn't this a matter addressed to the trial court sound discretion based upon the circumstances the attitudes the behaviors the fact finding the trial court is making in the courtroom because that that's frankly illinois law the determination of whether he was denied his right to counsel improperly is de novo review and we'll have to take that up with you your honor black and white law intensive counsel i'm not sure and for credibility determinations we should absolutely defer to the trial court um but but whether or not he was improperly denied his right to counsel is is de novo review and that that's that's black letter law in several cases and again it was also recognized implicitly in aims so um we we we should defer to their findings but everything else is on the record and i think this court has no problem making that determination de novo as to whether or not he was properly denied counsel not only as to whether or not uh there was extreme misconduct such that no warnings were required but also um but also whether or not they properly investigated the least restrictive measures that can absolutely be determined on de novo review and again we're bound by that anyway um again i i don't want to second issue um again there was more discussion about how while he was pro se um uh gary didn't gary didn't disclose his alibi defense i would again argue that he was not required to at that point uh but by the point counsel was reappointed uh he still had time to disclose his alibi defense it was counsel's decision not to disclose it and the the court kind of makes a mess of it i've got the language here um the court tells gary this is r2045 that it was his counsel's decision not to tender an alibi defense and that his record is protected and he can argue that counsel made the incorrect decision but also that would not apply because he lost the right to counsel but then it still reassured him that his record is protected well that right there shows the problem with conflating counsel's control over his case uh with with any uh possible waiver or his own tendering of an alibi defense he can't claim iac because you took away his attorney and so you can't bind him to the count you can't say it was counsel's decision not to tender an alibi defense he still had the opportunity to tender an alibi defense in fact and when we talk about his objection to the continuance he again he's getting discovery days before he goes on trial for first-degree murder still getting discovery he asks and it's denied discovery have to do with alibi defense well it goes because because at that point he he asks for continuance himself based on this is this because the disclosure of an alibi defense is a discovery violation that's all it is you you have to it's it's rule you have to disclose it in discovery so a late disclosure of an alibi defense is a discovery violation just like turning somebody over their discovery a week before trial and then denying them a continuance when they ask for the continuance so that's why they're tied together uh he asked he asked for continuance the court says no he says i got an alibi defense the state says we want to defend a continuance and he says no he his thought at that point is almost certainly you're not going to give me a continuance when you're dropping 350 gig or 35 gigabytes of video data on me a week before trial you're not going to give me a continuance i'm going to object to any continuance you ask for them again it wasn't an informed waiver because it seems clear from the transcript that the court was weighing two things their court was weighing the defendant's uh request regarding the alibi defense and then it was weighing the state's request for continuance because of that and it took those under advisement it seems as though they were pretty well married and should have been understood by the defendant as being flip sides of a coin that we honor i think that one way or the other i think a closer read of the record shows that this court was going to do everything it could to not grant a continuance it says that all the way it it drips through every word of the denial of his right to counsel the court wants to keep this thing this thing's going to trial may 22nd and and and and and and it keeps it makes counsel keep coming back to make sure he gets discovery the point is defendant knew these were linked issues i don't believe that that's on the record your honor if again if you read it in sequence uh there's they don't tie the issue together the court count the court never turns to him and says these these are the same thing they want a continuance uh they don't even get into whether or not the continuous is based on the uh the alibi defense until after he objects to the continuance so i don't i don't think you can't say that it was a waiver and and without waiver this is a clear and obvious error um and and it deserves a new trial you can't take away his that attorney and remove his only ability to make any kind of defense i think and let's we shouldn't really treat the gps as as at be all end all there there was something weird about the gps reports um he had if he had been able to put in three witnesses that said this is where i was and if i wasn't there why didn't it show up on my probation violation report you might have you might have reasonable doubt this might be a tribal issue but they they took that away from him they in the defense therefore they denied him the trial and they denied him the counsel at that lack of trial so with those trials one last overarching question if i may please quickly um do you concede that the defendant did not properly preserve any of the issues that you're raising before this court and you're looking for an exception to that such as through the on almost every issue in the reply brief and certainly i do have reply i do have my reply brief uh has plain air and everyone i do think that the the grand jury i think there's a good argument that the grand jury issue was preserved he he raises it maybe not as clearly and explicitly as we want to but he he files a motion to dismiss the indictment for prosecutorial misconduct pre-trial he's not very verbose about why but in the hearing for that he explains the situation that she never said street name gary erby she says goop this the police officer supplies that information to the grand jury and maybe not intentionally but makes it sound like she said his street name is gary okay so thank you counsel because i do believe that was preserved okay thank you counsel thank you all before concluding i want to mention that this is a interesting difficult case the courts asked you a lot of questions primarily i did and i appreciate mr waller your response to all of them and mr goldman that you were responsive as well it's always a service to the court when both counsel are able to respond appropriately and answer the court's questions so i want to thank you both for doing that and with that explanation then we will take this matter in advisement stand in recess issue an opinion in due course